UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| LINDA L. SALERNO, | No. ED CV 05-00334-VBK |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| v. | (Social Security Case) |
| JO ANNE B. BARNHART, Commissioner of Social Security, | |
| Defendant. | |

This matter is before the Court for review of the decision by the Commissioner of Social Security denying Plaintiff's application for disability benefits. Pursuant to 28 U.S.C. §636(c), the parties have consented that the case may be handled by the Magistrate Judge. The action arises under 42 U.S.C. §405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the record before the Commissioner ("AR"). The parties have filed their pleadings and supporting memoranda, and the Commissioner has filed the certified AR. After reviewing the matter, the Court concludes that the decision of the Commissioner must be reversed and the matter remanded for further proceedings.

1      This case has a plethora of evidence as to physical and mental
2 conditions, evaluations, and treatment, as reflected by a lengthy
3 Administrative Record ("AR").  After summarizing the medical evidence,
4 Plaintiff raises a number of claims of error.  She contends the ALJ
5 improperly failed to consider psychiatric limitations; failed to
6 consider the side effects of medication; improperly evaluated
7 Plaintiff's credibility; and failed to properly apply the "excess
8 pain" doctrine. (Motion at 9.)  The Court will address these issues in
9 order.
10      With regard to Plaintiff's contention regarding her psychiatric
11 limitations, the Court agrees that the ALJ failed to properly assess
12 the evidence.  At Step Two of the sequential evaluation process, the
13 ALJ found that there is insufficient evidence of a mental impairment.
14 (AR 30.)  In so finding, the ALJ referred to an extensive report of
15 Dr. Feldman, a board certified psychiatrist, prepared on November 15,
16 2002, reflecting evaluations in November and December of that year.
17 (AR 835-864.)  Dr. Feldman examined Plaintiff in his capacity as a
18 qualified medical examiner ("QME").  The ALJ discussed Dr. Feldman's
19 report and findings in his decision. (AR at 30-31.)  Dr. Feldman
20 diagnosed Depressive Disorder NOS on Axis I (AR 852), and also
21 assessed that Plaintiff would have slight to moderate disability in
22 relating to other people beyond giving and receiving instructions,
23 getting along with co-workers, performing work requiring negotiating
24 with, explaining and persuading because of reduced self-esteem, and
25 responding appropriately to evaluation and criticism.  In addition,
26 Dr. Feldman found slight to moderate disability in accepting and
27 carrying out responsibility for directions, control and planning,
28 setting realistic goals, negotiating with, instructing and responding

2

1  appropriately to changes in work conditions.  Slight to moderate
2  disability was found in making generalizations, evaluations or
3  decisions without immediate supervision, understanding and remembering
4  detailed instructions, making independent decisions or judgments,
5  setting realistic goals, and making plans independent of others.
6  Finally, Dr. Feldman found slight to moderate disability in
7  interacting appropriately with others. (AR 863.)  Nevertheless, citing
8  observations of Dr. Feldman which related to his psychological testing
9  of Plaintiff, the ALJ determined that Dr. Feldman's findings cannot be
10 found persuasive.  The ALJ noted concerning the MMPI test, Plaintiff
11 had a markedly elevated profile which he indicated "can occur when a
12 person is confused, disturbed, malingering or, for some other reason,
13 is claiming some very deviant or unusual behaviors." (AR 861.)  The
14 ALJ also noted indicators on the Personality Assessment Inventory
15 which fell outside the normal range and might suggest that Plaintiff
16 may not have answered in a completely forthright manner, and also
17 raised the possibility of mild exaggeration of complaints and
18 problems.  Inexplicably, the ALJ also discounted Dr. Feldman's
19 findings because Plaintiff has not sought any mental health treatment
20 (AR 30); however, this is clearly not the case.  The ALJ was in
21 possession of substantial psychiatric treatment records of Plaintiff
22 from Kaiser Permanente for that very period of time. (See AR at 892-
23 1004.)  In fact, the records from Kaiser span the period from 1994
24 through 2003.  Among those records is a letter from Dr. Staiti, a
25 Kaiser Permanente psychiatrist, who indicated that Plaintiff had been
26 under his psychiatric care from April 2, 1999 through the date of the
27 letter, June 18, 2003. (AR 901.)  Moreover, the Kaiser Permanente
28 records indicate that Plaintiff received a wide variety of medications

3

reported by the Kaiser Permanente Department of Psychiatry which are utilized in the treatment of mental conditions. These include Trazodone, Xanax, Paxil, Propanolol, Alprazolam, Resotoril, Desipramine, Amitrityline, and Serzone. (AR 498-500, 919-923.)

The ALJ also discounted the very existence of a mental impairment and in doing so relied on the consultative examination by Dr. Smith. (AR 460-465.) Even Dr. Smith, however, found during her one-time examination of Plaintiff mild impairment in Plaintiff's ability to interact appropriately with supervisors and co-workers, or the public, and on Axis I, diagnosed adjustment disorder with mixed mood.

All in all, the ALJ's finding of no mental impairment based on insufficient evidence is unsupportable by the record. Her discounting of Dr. Feldman's findings is based on a selective interpretation of Dr. Feldman's comments regarding the psychological test scores, which indicated a variety of possible reasons for the elevated test seores, some of which are totally unrelated to malingering or exaggeration. Moreover, Dr. Feldman noted these as only possible reasons, and therefore suggested further testing and evaluation.

It is beyond cavil that an impairment is not severe when it only demonstrates a slight abnormality and has no more than minimal effect on a person's ability to perform basic work activities. See 20 C.F.R. §404.1521(a)(2005); Social Security Ruling ("SSR") 85-28. None of the examining sources in this record indicate that Plaintiff has less than a mild disability pertaining to factors relevant to mental impairment. Certainly, any ambiguity in the medical findings should have resulted in further development of the record rather than a finding of insufficient evidence. See Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983)(per curiam). The importance of determining the existence

4

of a severe impairment is also relevant due to the fact that multiple impairments which may be insufficient in and or themselves may become disabling when considered in combination. (See 20 C.F.R. §404.1523.)

For the foregoing reasons, the Court finds that the ALJ's assessment of Plaintiff's mental limitations is not supported by substantial evidence, and the case must be remanded for further development of evidence and a new hearing.

Plaintiff's remaining three issues are related. First, she alleges that the ALJ failed to consider the side effects of medications. Plaintiff is primarily referring to pain medications and "pain cocktails" which she has been prescribed over the years. Plaintiff first notes that the medical expert ("ME"), Dr. Jensen, testified that such medications would cause side effects. (Motion at 12, citing AR 82.) The Court agrees, however, with the Commissioner's interpretation of that testimony; that is, the ME was referring to the fact that such pain medications could cause side effects, not that they did cause such side effects in Plaintiff's case. Next, Plaintiff asserts that she raised the issue of medication side effects in her forms submitted to the SSA. (Motion at 12, citing AR 168, 186, 192.) While Plaintiff did make these assertions, it is noteworthy that these forms were filled out on August 31, 2001 (AR 171), October 5, 2001 (AR 191), and again, on October 5, 2001 (AR 194). Following this self-reporting, however, Plaintiff was seen for pain management evaluation at the Haider Spine Center. When she was examined on August 15, 2002, she did report sedation associated with her pain cocktail, and as a result, her physician reconfigured the pain cocktail based on those complaints. (AR 694-695.) Several weeks later, on September 3, 2002, when Plaintiff reported back to the Haider Spine Center, she denied

any sedation from the reconfigured pain cocktail. (AR 691.) The ALJ properly relied upon the fact that the adjustment in her pain medications had alleviated medication side effects. (See AR at 26.) In addition, he noted that the pain cocktail had been discontinued on December 13, 2002. (AR at 26, citing AR at 819.) Finally, as the ALJ noted, when she was examined at the Haider Spine Center on August 15, 2002, although she complained of medication side effects (sedation), she was very specific and detailed with her complaints, demonstrated no lid lag, had no slurring of speech or other side effects, or other overt symptoms demonstrating sedation. (AR 26, citing AR at 694.) The Court finds that substantial evidence supports the ALJ's finding that medication side effects were not to be considered in the disability analysis.

Plaintiff also asserts that her credibility was improperly evaluated by the ALJ. The particular aspect of the decision referenced is at AR 28, where the ALJ notes that, "The [Plaintiff's] statements of record with respect to the extent, intensity and duration of her alleged subjective pain and functional limitations and restrictions are not credible or consistent with the record as a whole." While Plaintiff asserts that the ALJ violated the rule of Lester v. Chater, 81 F.3d 821 (9th Cir. 1995) by simply detracting from her credibility because of inconsistencies between subjective complaints and the objective medical evidence, the record does not substantiate this characterization. The ALJ in fact made the required specific findings based on these factors: the testimony of the ME, distinct contradictions between her allegations of physical pain and the absence of any diagnosis of impairment in the areas she complained of (for example, that she alleged she had shoulder pain while she had

no diagnosis of a shoulder impairment which would require surgical intervention, and, in addition, MRI results of that area were normal. See, AR 28, 590, 670.) The ALJ also noted that Plaintiff's testimony regarding her activities of daily living ("ADLs") was inconsistent with statements she made, primarily to other medical providers. During the hearing, Plaintiff testified that during the day, she typically remains in a recumbent position for nine or ten hours, watching television; that she has no other regular social activities or hobbies, and that when she is not in a recumbent position, she is sitting in a straight chair or standing. (AR 96-99.) She testified that she does no cooking at home or cleaning, activities which her husband has taken over. (AR at 100.) This testimony occurred on October 21, 2003. When Plaintiff spoke with Dr. Feldman less than a year earlier, she told him that in addition to watching television, she does laundry, cleans, does a little cooking, a little yard work, and some home therapy. (AR 837.) In her Motion, Plaintiff points to no objective evidence of deterioration in her physical condition which would explain these inconsistencies. In addition to these factors, the ALJ properly noted that while Plaintiff continued to complain of sedation from her pain medications (see AR at 92), it is apparent that the reconfiguration of her pain cocktail alleviated these side effects. Plaintiff's continuing complaints, therefore, substantially contradict her reporting to other sources that she had no such complaints, which constitutes a proper factor in the credibility analysis. (See AR at 28.) Finally, while it is improper for an ALJ to make decisions based on "sit and squirm" adjudication (see Perminter v. Heckler, 765 F.2d 870 (9th Cir. 1985)), as Plaintiff concedes, an ALJ may include and rely upon her personal observations as one part of

7

the credibility analysis. (See Motion at 14.)

The Court finds that the ALJ's credibility determination is supported by substantial evidence.

Finally, while Plaintiff makes a separate argument asserting error regarding the ALJ's application of what Plaintiff characterizes as the "excess pain" legal doctrine, this is part and parcel of the credibility analysis, which the Court has already discussed.

For the reasons set forth in this Memorandum Opinion, this matter will be remanded for further hearing.

**IT IS SO ORDERED.**

DATED:  February 16, 2006 

/s/
VICTOR B. KENTON
UNITED STATES MAGISTRATE JUDGE